May it please the Court, my name is Christina Flores, Maria Christina Flores, and I'm here on behalf of the petitioner, Mr. Wenge Zhang, and I would like to reserve two minutes for rebuttal at this time. This case involves a claim for asylum, withholding of removal, and torture convention relief. The petitioner was denied all forms of relief by the immigration judge, and it was based exclusively on an adverse probability determination, and it was based upon two primary fact patterns. The petitioner is a native and citizen of the People's Republic of China. The claim is based on religious persecution that he suffered in his native country. There were no determinations by the immigration judge of the underlying claim. There were no determinations of whether the petitioner met the burden of proof, whether there was any past persecution or any well-founded fear of future persecution. The petitioner was introduced to Christianity in January of 2006, and this was by a person who simultaneously had become a customer of his home remodeling business. The petitioner, a week after he was introduced to this person, began attending underground home church meetings at this person's home. He was baptized in May of 2006. He continued attending the weekly underground meetings until Christmas Eve of that year, 2006, at which time he hosted the church gathering of some 35 church members at his place of business. Pardon me for interrupting. Yes. The narrative you're providing is the narrative he provides. Could you please address the basis for the adverse credibility finding? I'm thinking in particular of the conflict in the narrative as to when he met Mr. Li, whether he was a repeat customer or not. Yes. I'm thinking also of his different descriptions of the picture on the wall, and third, the different descriptions of his wife's occupation. Yes. All of those seem to me plausible bases for an adverse credibility finding. Yes. The first basis of the adverse credibility was when actually the petitioner, the basis of the relationship, how it began, the inception of it. The respondent indicated that in January of 2006, this was the first time that he was introduced to Christianity, and it was when he visited the customer's home for the very first time. And there were several instances in the testimony where he confirmed that this was the very first time he had ever been to Mr. Li's home. He said in a written statement, though. Is that what you're going to get to? Yes. In contrast, the written statement indicated that the very first time that he was introduced to Christianity was in fact when he saw these religious symbols in the bedroom of a repeat. Yes. He said that the gentleman was a repeat customer. That's correct, yes. And in speaking with the petitioner and clarifying what exactly he meant, I believe if the case is remanded that he would provide testimony to the fact that when he wrote the written statement, he was looking backwards. He was reflecting on his past relationship as opposed to 2007. When he wrote the statement, he was indicating that at the time he was a past customer of his, because time and time again when the misunderstanding, did you in fact, was this the first time that you had had any relationship with Mr. Li? And he confirmed several times, yes, this was the first time. So that leads me to believe that there must have been some error in syntax or a translation error. And in fact, the Mandarin word that was used here could either indicate former customer or repeat customer. And I believe that... This is the Mandarin word in the statement? Correct. In his written statement. And his intention was that it was a former customer. And again, he's looking back to 2006 from when he wrote the statement in 2007. This was my former customer. Do we have anything in the record that is an authoritative translation other than the translation your client provides? No, I do not. But if the case is remanded, we would certainly provide such evidence. I believe there is a problem oftentimes in Mandarin, translating from Mandarin to English as to tense a lot of times. There is some confusion as to that. Was that a claim that was made before the IJA or in an appeal to the VIA? No. Actually, I was able to confirm it was in preparation for today's hearing. So basically, this is new information that you're... It is, yes. It is, yes. With respect to the second factual basis of the adverse credibility determination, and that is, what is the actual picture on the wall that he viewed in his customer's bedroom wall? In the... In his testimony, he indicated that it was a Caucasian looking person, not an African person, with long hair, standing with a few lambs, with a symbol of a cross in the background on a hill. And that's as opposed to his written statement, which indicated that he saw a person nailed on a cross. And... But both his testimony and his written statement confirmed that he... When he asked Mr. Lee, well, what is the meaning of that picture? Mr. Lee did indicate that is the Son of God who was crucified and nailed on a cross. But the problem is, if he's describing the picture in these two different ways, the suspicion is that he can't remember what was written in the initial statement. I understand that, Your Honor, but I believe the court needs to take into consideration that when he saw that, he was not a Christian. And there is also no... Or limited information as to what opportunity he had to see that picture on any subsequent occasions, because he indicated that the work that he did, the remodeling, was to make the living room bigger, and it could be that the painting was inside the bedroom. And even though he was visiting the... Mr. Lee's home every week for the church gatherings, he may not have seen this picture again. This is a time... What's the explanation that he offered for the discrepancy? He indicated at the time that when he first saw it, he wasn't a Christian. That's why he was curious about what was depicted in the picture. He inquired about it, and he didn't have an opportunity to see it again. How does that account for the discrepancy? I mean... I believe at the time he had become a Christian. Presumably pressure in his mind then, right? That's correct. But he was a new Christian. He was a relatively new Christian. He wasn't, you know, totally familiar with all of the doctrine of Christianity. How does the passage of time between the written statement and his testimony allow for the development of this new... I mean it's a different description than he gives, albeit kind of in the same genre, but it's a nonetheless different description in detail. What does he give... What explanation does he give to account for that difference in detail? The explanation that he gave was that when he saw it, it was a time when he wasn't a Christian. It was new to him. And, you know, he was curious about it, that he didn't have an opportunity to see it again. And in both his testimony and in the statement, he did give similar... He did mention symbols. In both, he mentioned the cross, he mentioned the man and the description of the man. It was just whether he actually saw Christ on the cross or whether it was because Mr. Lee told him. Yes, it was. Okay, well, your time is running. Could you quickly address the disparity in the description of the cross? Well, the court can take judicial notice of the country reports, which indicate that there is a serious problem in China concerning the accuracy of household registrations, especially in rural areas, and this is the case in this situation, that oftentimes they are... They do have inaccurate information, and it's up to the government agents to have an incentive to want to change it. I'm sorry. Was this something that was raised at the time of the hearing for the IJ? No. Or in an appeal for the BIA? In the appeal, yes. The country reports. It was raised that that is a serious problem in China, that there are oftentimes inaccuracies in the household register. Okay, thank you very much. Your time has run. We'll give you a minute to respond. May it please the court, my name is Brooke Mauer, for the respondent of the Attorney General of the United States. Initially, I want to apologize. I'm still getting over a cold, too, so if I start coughing, I apologize. So in response to the petitioner's assertion that the adverse credibility determination isn't supported by substantial evidence, the government notes that there are two major bases that the IJ found the inconsistencies pertinent is because, A, they pertain to the fact that he was a Christian when he met Mr. Lee. Whether he was a repeat customer or not, he failed to even adequately explain when asked about it, and the IJ even interjected and did start asking the petitioner when he actually met him, trying to get the chronological times down. The petitioner still wasn't able to adequately address that. In addition, also relating to the Christianity claim, is the picture itself. Now, I know the petitioner is arguing that he was not a Christian at the time and did not know, but that doesn't in and of itself explain the material differences between what transpired and what was actually in that picture. The petitioner even very clearly stated during his testimony that that picture was a meter in length and then very adequately and very descriptively explained that there was a hill with lambs and described where the cross was on top of the painting, whereas his statement clearly stated that it was a man who was specifically nailed to a cross. And the IJ found that this did call into question the Christianity in and of itself. Number two, his alleged arrest also took place at- Counsel, I gather, normally, in normal human discourse, this would be a big deal. But this, I gather, the government claims goes to the heart of the claim. Because but for the Christianity, there would be no claim here. Is that right? Well, I mean, although it's not at the heart of a claim issue, I mean, because this is a post-real ID, but taking in the totality of it, yes. I mean, looking at when he actually, in fact, if he did become a Christian, and then also, as I was going into where he was arrested at his place of business, the IJ had inquired and they'd looked at, there was nothing in the record to show he was, in fact, a business owner. Going to the household registries, which is basically two interpretations of the July, I believe, 17, 2007 household registry, both of them listed the household as an agricultural household. And the petitioner- So basically, it's just a series of unsubstantiated claims that go to the, well, actually, in the real ID, a little different, but that really undermined his credibility and he has nothing to rebut. That is correct. And he did, the IJ did request additional information. The petitioner even asked his wife for information, but that information was never provided. And so, there really can't be, I mean, there is really no argument that he was unable to find it, because his wife was clearly able to send him information relating to his past and, like, what had happened back there. And it just wasn't pertinent, it wasn't part of the record. So the government contends that the adverse credibility finding is, in fact, supported by substantial evidence and the court should uphold the agency's determination. No further questions? Government will rest on its priest. Thank you. Would you like one minute? Yes. Your Honors, with respect to the providing of additional evidence, during the time that this case was pending, the Respondent was able to locate some evidence that his wife had mailed him and he had misplaced concerning his medical treatment. So that would be additional evidence that we would provide if the case is remanded back to the immigration judge. But with respect to the hostilities and the other inconsistencies, we don't believe that they are sufficient to substantiate an adverse credibility determination. I believe if you look at Randy Holder, which is the Ninth Circuit in 2011, that minor and trivial inconsistencies are not sufficient to justify such a finding and that the court needs to consider that there are normal limitations of human understanding based upon the lapse of time. And because the petitioner was not a Christian, we only have evidence that he was able to see that picture at least on one occasion. We don't know of any other opportunities that he had. And that is his best recollection. So we would ask that the court would remand the matter and reverse the adverse credibility determination. Thank you very much. Thank you, Your Honors.
judges: Fletcher, Smith, Watford